JiDECUIR, Judge.
Harris Young and his son, Phillip Lee Young, filed suit against the Vernon Parish School Board, its insurers, International Indemnity Company and Audubon Insurance Company, and Alvin Horn, Jr., Adholf Green, and Paul Vinson, Sr., parents of Phillip’s teammates who allegedly threw Phillip into a mudhole and piled on top of him after baseball practice on February 12,1990. Plaintiffs allege that as a result of this “initiation” incident, Phillip sustained a deep vein thrombosis. The suit against the school board was tried before a judge and the suit against the remaining defendants was tried before a jury. The jury returned a verdict in favor of defendants finding that Phillip Young did not sustain injuries as a result of the incident alleged to have occurred on February 12, 1990. The trial judge made the same finding and judgment was rendered dismissing plaintiffs’ claims against all defendants. Plaintiffs appeal contending the fact finders erred in finding that Phillip Young did not sustain injuries as a result of the incident of February 12, 1990.
It is well settled that an appellate court may not set aside a trial court’s or a jury’s finding of fact in the absence of manifest error, and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). Furthermore, when findings are based upon ^determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact’s findings. Canter v. Koehring, 283 So.2d 716, 724 (La.1973). Based upon our careful review of the record *558 and application of the standard enunciated above, we find no manifest error and affirm the judgment below.
Evidence in the record reflects that approximately three days after the “initiation” incident, Phillip and his brother embarked on a trip by car to California. The incident sued upon occurred on a Monday. Phillip and his brother left home on the following Thursday, arrived in San Diego, California, on Saturday, and left California the next day to return home. Phillip and his brother took turns driving, apparently stopping only when necessary to eat, rest and obtain fuel. After the trip to California, Phillip was seen by Dr. John Hearn, Jr., on February 19, 1990, complaining of pain and stiffness in his lower back and left lower leg. Dr. Hearn diagnosed myoligamentous strain and prescribed a muscle relaxant and an analgesic. Although Phillip told Dr. Hearn of the incident on February 12, 1990, he did not inform Dr. Hearn that he had just returned from a trip to California and back in only four days. Phillip was seen in March 1990, for a second opinion by Dr. Chanh Vinh, general practitioner, with complaints of pain in the left leg and swelling. Phillip advised Dr. Vinh of the incident of February 12,1990, but again did not inform Dr. Vinh of the trip to California shortly after the incident at school. Dr. Vinh ordered a veno-gram of the left leg which, according to Dr. Vinh, indicated total blockage of the deep veins. Phillip was hospitalized and underwent anti-coagulation therapy. It was Dr. Vinh’s opinion that Phillip’s condition was due to the incident at the school.
Dr. Vinh subsequently referred Phillip to Dr. Am P. Mai, an internist. Dr. Mai conducted an examination and ordered an arteri-ogram to rule out arterial problems. No problem was noted with the artery and Dr. Mai’s final diagnosis was deep venous thrombosis. Dr. Mai testified it was his opinion that the blood clot or obstruction was located in the left pelvic area. He also testified that Phillip’s condition could be caused by “stasis.” Dr. Mai explained: “In other words, you know, you sit down on a spot for a long time, it can causes (sic) some kind of a problem like this.”
Defendants called Dr. Benton Dupont, general surgeon, at trial. Dr. Dupont testified that he saw no evidence in the medical records of a trauma significant enough to cause deep vein thrombosis. According to Dr. Dupont, the pelvic vein where the blood clot was located is a very well protected vein that lies within the center of the pelvis. According to Dr. Dupont, the anatomy of this 13area is such that injury to the veins within is usually associated with a “crush” injury to the pelvis or a broken bone, “a major injury requiring extensive evaluation.” Dr. Dupont testified that the most common cause of deep vein thrombosis is prolonged bedrest and that any condition which causes one to be motionless or immobile for long periods of time can render one particularly susceptible to the development of deep vein thrombosis. It was Dr. Dupont’s opinion that Phillip’s condition was more probably caused by the trip to California.
Sufficient evidence clearly exists to support the trial judge and jury finding in this case. The findings are reasonable in light of the record reviewed in its entirety and for this reason, we affirm.
Costs of appeal are assessed to plaintiffs-appellants.
AFFIRMED.